COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-493-CV

 

 

IN THE INTEREST OF T.W. AND 

C.W., CHILDREN

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellant
Treshia B. appeals from the termination of her parental rights to her children
T.W. and C.W.  After a bench trial in
December 2008, the trial court found by clear and convincing evidence that
Appellant had (1) knowingly placed or knowingly allowed the children to remain
in conditions or surroundings that endanger their physical or emotional well‑being
and (2) engaged in conduct or knowingly placed the children with persons who
engaged in conduct that endangers the children=s
physical or emotional well‑being.[2]  The trial court also found that termination
of the parent‑children relationship would be in the children's best
interest.[3]  In six issues, Appellant argues that the
evidence is legally and factually insufficient to support the trial court's
findings.  Because we hold that the
evidence is legally and factually sufficient to support the trial court=s
judgment terminating Appellant=s
parental rights, we affirm that judgment.

As we have explained
in a similar case, 

Endangerment means to expose to loss or injury, to
jeopardize.  The trial court may order
termination of the parent-child relationship if it finds by clear and
convincing evidence that the parent has knowingly placed or knowingly allowed
the child to remain in conditions or surroundings that endanger the physical or
emotional well-being of the child.  Under
subsection (D), it is necessary to examine evidence related to the environment
of the child to determine if the environment was the source of endangerment to
the child=s physical or emotional well-being.
Conduct of a parent in the home can create an environment that endangers the
physical and emotional well-being of a child.

 

. . . Under subsection (E), the relevant inquiry
is whether evidence exists that the endangerment of the child=s physical or emotional well-being
was the direct result of the parent=s conduct, including acts, omissions, and failures to
act.  Termination under subsection (E)
must be based on more than a single act or omission; a voluntary, deliberate,
and conscious course of conduct by the parent is required.








To support a finding of endangerment, the parent=s conduct does not necessarily have
to be directed at the child, and the child is not required to suffer
injury.  The specific danger to the child=s well-being may be inferred from
parental misconduct alone, and to determine whether termination is necessary,
courts may look to parental conduct both before and after the child=s birth.  . . . A parent=s decision to engage in illegal
drug use during the pendency of a termination suit, when the parent is at risk
of losing a child, supports a finding that the parent engaged in conduct that
endangered the child=s physical or emotional
well-being.  Thus, parental and caregiver
illegal drug use supports the conclusion that the children=s surroundings endanger their
physical or emotional well-being.  A
factfinder may also reasonably infer from a parent=s failure to attend scheduled drug
screenings that the parent was avoiding testing because the parent was using
drugs.  As a general rule, conduct that
subjects a child to a life of uncertainty and instability endangers the child=s physical and emotional
well-being.  

Because the evidence pertaining to subsections
161.001(1)(D) and (E) is interrelated, we conduct a consolidated review.[4]

 








The
evidence at trial shows that in June 2007, while on community supervision for
two prior burglaries, Appellant, who was on cocaine, left her fatherless
four-year-old and five-year-old alone in a motel room while she went to commit
a burglary of a home near the motel.  The
children had access to an unloaded BB gun, BBs, and prescription drugs
including pain pills but had no access to food other than the remains of the
meal they had eaten the night before.

Appellant
was caught during the burglary, and she told the arresting officers that she
had left her children in the motel room; she testified that the children were
alone about thirty minutes.  Appellant
bonded out on the same day as her arrest, and the children were removed by CPS
that same day.  Appellant was rearrested
in August 2007 because the new offense was a violation of her community
supervision conditions.  On March 13,
2008, Appellant pled true to the State=s motion
to revoke her community supervision and was sentenced to serve five years=
confinement in the penitentiary.  At the
termination trial, she testified that she would be paroled in February 2009, less
than two months away.

During
the time period between the June and August 2007 arrests, Appellant did not
fully participate in services although a service plan was already in place; at
trial, she excused her noncompliance on the basis that she was Adrug
sick.@  She continued to use cocaine during this
time.  In fact, Appellant testified that
she used cocaine approximately every day between 2003 (after the children=s father
died) until she was arrested in August 2007, except for times of
incarceration.  She admitted that
incarceration was the only thing that had stopped her drug use.








She also
testified that her mother and sisters used drugs, that she had left her
children in their care on occasion, that she and the children had lived with
one sister until a few days before her June 2007 burglary, and that she planned
on living with her sister after being released on parole in February 2009.

Appellant
testified that she had done some drug treatment in prison and would continue
drug treatment on parole.  She also
stated that she was on Step 3 of Narcotics Anonymous (NA) but could not
remember what the first two steps were. 
Appellant had also attended parenting classes while incarcerated.  Appellant asked for a chance to demonstrate
that she now had A[her] head on straight@ and
would no longer use drugs even after her impending release from prison.

Appellant
hoped that her children could stay in their present placement with her cousin
until Appellant could get a job and get back on her feet.  Appellant believed that her children were
safe with her cousin and wanted them to remain with her cousin if they could
not be returned to her but stated, AI feel
like no one can love your kids more than you do. . . .  I just feel like I want my own kids in my own
care and I feel like they deserve [me] and I deserve them.@
Appellant did not testify about any specific plans for achieving the stability
necessary for the successful return of her children.








The
children had lived with Appellant=s cousin
and her husband in Seoul, Korea for a few months.  The CPS caseworker testified that the
children are doing well with the cousin but also admitted that Appellant and
the children have a bond and that she had seen this bond during a visit at the
prison.  There was also evidence that the
cousin would allow contact between Appellant and the children.  Both the CPS caseworker and the CASA
volunteer testified that they believed that termination of Appellant=s
parental rights would be in the children=s best
interest.








Applying the appropriate
standard of review,[5]
we hold that the evidence is legally sufficient to support the trial court=s endangerment
findings.  Also applying the appropriate
standard of review,[6]
we hold that the evidence is factually sufficient to support those
findings.  Finally, applying the
appropriate standards of review, we hold that the evidence is legally[7]
and factually[8]
sufficient to support the best interest finding.  We overrule all of Appellant=s issues
and affirm the trial court=s
judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  CAYCE, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED:  December 17, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. ' 161.001(1)(D), (E)
(Vernon Supp. 2009).





[3]See id. ' 161.001(2).





[4]In re J.W., No. 02-08-00211-CV,
2009 WL 806865, at *4B5 (Tex. App.CFort Worth Mar. 26, 2009,
no pet.) (mem. op.) (citations omitted); see also In re J.O.A., 283
S.W.3d 336, 345B46 (Tex. 2009).





[5]See In re J.P.B., 180
S.W.3d 570, 573B74 (Tex. 2005).





[6]See In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006); In re C.H., 89 S.W.3d 17, 28 (Tex. 2002).





[7]See Tex. Fam. Code Ann. ' 263.307(a), (b)
(Vernon 2008); In re R.R., 209 S.W.3d 112, 116 (Tex. 2006); J.P.B.,
180 S.W.3d at 573B74; Holley v. Adams, 544
S.W.2d 367, 371B72 (Tex. 1976).





[8]See Tex. Fam. Code Ann. ' 263.307(a), (b); R.R.,
209 S.W.3d at 116; H.R.M., 209 S.W.3d at 108; C.H., 89 S.W.3d at
28; Holley, 544 S.W.2d at 371B72.